Good morning everyone. Before we actually begin our oral arguments, Judge Bay and I would just like to thank and acknowledge Judge Janice Jack, who's visiting with us from the Southern District of Texas, and we're very pleased to have her with us for these past, for a few days. Thank you. I'm glad to be here. And with that, we will turn to the calendar. The first case on the calendar is Singh v. Barr, but that's been submitted on the briefs and record without argument. And our first case for argument is Sanchez v. Saul. Good morning. May it please the Court, I'm Michael Wolchansky from Bay Area Legal Aid, representing appellant Ms. Adriana Sanchez. I'd like to reserve two minutes for rebuttal. Before you today is a young woman with an extensive mental health history of depression, anxiety, childhood trauma, panic attacks, and social phobia, who was treated for about two years by psychiatrist Dr. Mansour. Today I'll focus on two of the errors in the ALJ's decision. The first is that the ALJ erred in weighing of the compelling opinion of treating SOAR psychiatrist Dr. Mansour, who treated Ms. Sanchez for about two years, met with her ten times, adjusted her medications, and works in a clinic that specializes in care for young adults and whose opinion is supported by the record. The second is that the ALJ erred in formulating a residual functional capacity that is not supported by the record. In his decision, the ALJ rejects treating SOAR's Dr. Mansour's opinion by providing the reason that Ms. Sanchez had a good response to medication and medications remain largely unchanged. Mr. Wolchanski, may I interrupt you for a second? You're not raising an issue that the ALJ erred at step two, that Ms. Sanchez's migraine headaches, PTSD, and ADHD were not severe impairments. Two things about that, Your Honor. We do raise that in our brief. I wanted to focus more on the other issues today. But for the step two issue... It's sufficiently done in your brief. Is that it? That is correct. And I won't take up any more of your time. Okay, thank you. And I'm happy to address that as well. But the second issue was that the ALJ erred in formulating the residual functional capacity that's not supported by the record. In his decision, the ALJ rejects treating SOAR's Dr. Mansour's opinion by providing the reason that she had a good response to medications and that they remained unchanged, but that reason is not specific and legitimate nor supported by the record. Ms. Sanchez's medication types or dosage was changed nine times between June 2013 and July 2015. Notations of a good response to medication were either short-lived, coincided with medication adjustment, or case management. So her medications were increased, is that correct? Both... Like for Prozac. Correct. They were increased and they were changed. There are times where they added Trazodone to deal with some of her sleep issues, which also deals with some of the symptoms related to flashbacks related to her PTSD. And then also her types was changed, Paxil, Prozac, and they also added Sertraline. In addition, they changed the dosage multiple times, nine times over the course of treatment. Is it correct that she was a non-compliant patient? I think that's what the judge found. Well, that is... So two things about that. One, that wasn't raised by the... Specifically in the ALJ's decision regarding treating source Dr. Monsoor. So it's not reviewable. But the other thing is that she was compliant with her medications. The record shows that any non-compliance was resulted and was due to her not having insurance... Finances. I'm sorry? Finances. Finances, exactly. Not having insurance, not understanding the nature of her condition. So really, she is compliant just about all the time in the record with her medications. And her non-compliance is really only related to insurance, finances, or inability to access care. And going back to the residual functional capacity that the ALJ provided in this decision, it's not supported by the record because it doesn't include all of Mrs. Sanchez's limitations. In the residual functional capacity formulation, the only mental health restriction provided is that she's to have no public interaction and only occasional co-worker interaction. However, multiple medical sources agree that she has at least some limitation in her abilities for concentration, persistence, and pace. In fact, multiple doctors in the record agree that Mrs. Sanchez has at least some limitation in eight additional functional domains, none of which are provided for in the residual functional capacity. So if your argument is, at least with respect to the RFC, is that to get there, don't you have to hold... Wouldn't we have to hold that the ALJ's decision with respect to Monsoor, and I guess it's Preece? Preece. Preece is not supported by substantial evidence. Is that correct? And the ALJ also rejected her testimony as well. A couple of things in terms of the RFC. Even if you find that the ALJ properly weighed the decisions in the opinion of Monsoor and Preece, there still remains the step two issue where even non-severe symptoms should need to be included in the residual functional capacity formulation. And those symptoms related to post-traumatic stress disorder, migraines, ADHD, are not mentioned at all and not even touched upon in the residual functional capacity. But I thought your primary argument was that the ALJ's rejection or giving minimal credit to Monsoor and his trainee and Dr. Preece simply was not supported by substantial evidence. That's correct, Your Honor. And we do believe that it was not supported by substantial evidence. But even other medical consultants in the record, Drs. Leiser and Weiss, who the judge purported to give considerable weight to, and Dr. Carey, who reviewed the record but was a non-examining doctor, still found at least moderate limitations in her functioning, which is not accounted for in the residual functional capacity. So even in the absence of that, which I believe the court would find that there is no specific and legitimate reason, not supported by substantial evidence for the findings of Dr. Preece or Dr. Monsoor, the residual functional capacity still does not have an appropriate formulation based on the record, the totality of the record and her symptoms and her limitations. Okay. Okay. What's the relief you're seeking? Well, the relief we're seeking is award for payment of benefits. And the reason that we're seeking that is because I believe that she meets all the credit. To get there, wouldn't you have to conclude that the ALJ's decision to sort of discredit Monsoor and Preece is not supported by substantial evidence? Correct. Additionally, though, there is still – If you're just arguing as, well, the RFC didn't account for certain conditions that are reflected throughout the record, no matter what, that sounds like it's just a straight remand. Which is possible and acceptable as well. However, according to the vocational expert testimony, the vocational expert found that on a number of realms, if Ms. Sanchez was absent more than two days, or a number of realms that Dr. Leiser, Weiss, Dr. Carey identified, if that was credited as true, then the ALJ would have found her to be disabled because of the vocational expert's testimony who found that any one of those symptoms singularly or combined would cause her to have no jobs. I'd like to reserve the rest of my time for rebuttal, please. Thank you. Good morning, Your Honors. May it please the Court. Laura Brott for the Commissioner. I want to start by addressing something that I think counsel respectively got wrong. The notion that non-severe impairments need to be included in the RFC is incorrect. They need to be considered in the RFC analysis, and the ALJ did consider them, all of the impairments or the restrictions or limitations that would have arisen from those impairments, in the analysis of the RFC. Therefore, if there was any error at Step 2, and I don't think there was for some of them, in particular migraines, which was specifically addressed, but if there was any error at Step 2 at all, that would be harmless error because it was the limitations from the mental health conditions were discussed at length in the opinion. Are there any questions on that? I see you seem like you want to ask something. Why don't you try again to explain your position because I think I missed the last portion of it. Sure. Okay. So let me start. Let me back up. When you have a severe impairment, that means an impairment that more than minimally or significantly affects a person's ability to perform work. So there have to be significant. Are we talking about Step 2? Yes. All right. Step 2. I'm sorry. I should have been more clear. So when you have a severe impairment, it has to significantly affect, and they have raised the issue of whether the PTSD is a severe impairment, and I acknowledge that it's not discussed in the Step 2 area, which is on page 15 or 28 of the excerpts of record, page 3 of the decision, but it is discussed later in the opinion, and our position is that that satisfies, that's sufficient to address what counsel was raising about the RFC. I understand. Did you want to comment on counsel's position as to Dr. Mansoor and Dr. Price? Yes, I would like to do that. So I think that really gets to the heart of the case here, the Mansoor issue, because when I read the records from Mansoor and Levy, I did not see the picture that the claimant is painting of those particular records, and I think the ALJ did not either. So when I read that, I saw, and I can go through for you, many, many notations of pretty normal, except maybe for depressed mood, in some cases mental status examinations. I saw the claimant saying as early as August 2013 that ---- Pardon me, may I interrupt you? Yes. Your position then is not that there wasn't contradicting evidence in the medical records as to Mansoor. What you're saying is that Mansoor didn't find her to be as ill as the appellant claims. I'm saying, let me be, that's a good clarification, let me be clearer. So the ALJ has to reject the opinion based on substantial evidence. Reject the opinion of a treating physician. Right, which Mansoor was. Correct. Now you've got me focused. Okay. All right. And on page 8 of the decision, we have the ALJ saying,  and the most important part of that paragraph is when they say, their own clinical records conflict significantly with their opinions. That's very important, that's in line with Tomasetti, and that is why I think this decision is defensible, because when you read their notes ---- Who's there? Mansoor and Levy from STARS, the clinic, you see that even the claimant was saying here on page 477 on Paxil, her anxiety improved from 8 of 10 to 3 out of 10. Her depression improved on a 10-point scale, so meaning at 8 of 10 it was very high, at 3 of 10 it's quite low. Depression improved from 7 out of 10 to 1 without side effects. They did modify the Paxil medication later, but then you see that when they changed it to Prozac, she continued to report that she was feeling better. And I think what the ALJ was saying was, we have these opinions saying that she's very limited, but we don't have the medical records, it doesn't look that way. The medical records show that, you know, that they had to adjust her medication repeatedly over a long period of time, both in the quantity and the type. And that's true, they were adjusting it. They were medical management appointments, so she continued to say he complains about her not taking it at various times. That's also a complicating factor. I think when these doctors, you can see they're prescribing medicine and they're listening to, you know, I think on the Paxil she said, I'm feeling good, but I'm sorry. No, go ahead. I don't mean to interrupt you. She said, I'm feeling good, my mood is good, but then later on she had a good response to Paxil. This is on page 500, significantly improved mood. She'd been pretty active. She's going to help her sister out in public parks with photography. Her mental status was normal. And then later she says she thinks she's having increased irritability and anger with the Paxil. So then they go back to Prozac. This is now months later. There are no complaints in here that she's deteriorating, she's having suicidal thoughts. That doesn't happen in between. She's feeling good. She's saying she's feeling good, but I'm irritable, I'm anxious. She says, okay, let's try Prozac. Then she reported that she was taking the Prozac on and off. I don't see that that was because of a lapse in insurance. She's still seeing the doctor. How old was she at that time? This is 2014. Let me see, I'll have to do some math. I think she was probably around 22, I think, in her early 20s. So she's ‑‑ It all began when she was pretty young, correct? Everything began when she was very young. I mean, that's part of the analysis, too. I think the ALJ is saying we have a very young person and we have records that are giving us pause when we see the marked limitations because if it all matched up, I think we would have a different decision. But it doesn't, and that's why. He characterized her treatment as, what did he call it? Nonaggressive or kind of, what was the word that he used? Sometimes conservative is the word used. That might be what you're thinking of. I don't know if that's the word he used here. I'm not sure. These drugs are pretty serious drugs. Well, I think they're pretty common drugs. Right, but they're still, I mean ‑‑ Yes, I mean, I don't think that the decision turns on the characterization of the care is conservative or not. I think it turns on the fact that the ALJ is seeing improvement and that she is saying in these records, I'm better, I've gotten better, I've gotten better. Now, I do want to point out that this, and I think ‑‑ Let me ask you this. What were the reasons that you understand the ALJ gave to basically discredit Dr. Mansour? They are the fact that the doctor's records, their own clinical records conflict significantly with their opinions. So she's reporting ‑‑ But that's one reason. Right, and I think that's the controlling reason. That's the reason. I think that is the reason that's supported by substantial evidence, the most substantial evidence, and I think that carries the day. Okay. All right. What do you understand the relief to be here that they're seeking? I think that we should, that you, Your Honors, should affirm, but if you don't, this is not a case where you can, you're able to remand for payment. This, as, if you read the decision, there are so many conflicts in the evidence, and you see the ALJ going back and getting more evidence, getting more evidence, precisely because it just doesn't line up on the papers. It just doesn't make sense to the ALJ on the papers. That's why there was the medical expert at the hearing. Then they said we need a consultative. They took the consultative, Dr. Preece, and then the ALJ didn't think that lined up either because Preece's opinion was very, was out even beyond any of Mansour's opinions,  they did a lot of testing, and a lot of the testing was normal. So the ALJ then got another expert. So in a case like this where you're seeing, you know, continual conflicts, it's just it's not a case where payment would make sense, immediate payment. Okay. Thank you. Thank you. Thank you, Your Honors. I would like to focus on really the Dr. Mansour and what the commissioner discusses as the reason. The reason that the commissioner says is the clinical records conflict significantly with their opinion. However, there's nothing to tell us what conflicts significantly with the opinion. The only insight we have is what we had mentioned earlier, is that her medications remained unchanged, which we see is not true, and that she had a good response to medication. Now, if we look at the good response to medication, over time, every time there is some notation of good response or more improvement, there's also multiple notations of ongoing symptoms. Indeed, her mental statics exam shows that she's sad or has some sort of irritability or some sort of notation that she's not normal. Next, there was a comment about her being on and off of her medications, which was indeed her saying that she had to stretch a one-month supply to two months. This Court has held that simply stated conclusions are not substantial evidence, and because the reason that was provided for discounting Dr. Mansour's opinion has really nothing to it and is not explained, there's really no legitimate reason or supported by the record. Next, the Commissioner also mentions that there were normal tests of Dr. Preece, but every single test notation has a notation, almost the line after it, noting that in situations of high emotionality, that her cognitive ability would decrease. Indeed, this is not a case about her cognitive ability, but about her mental health symptoms and limitations. And we would respectfully request that this Court remand for payment of benefits, and I thank you for your time. Okay. Thank you very much. Thank you very much, Counsel, and that is submitted.
judges: Paez, Bea, Jack